IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| EARLENE BRODY,<br>    Plaintiff,<br><br>v.<br><br>ABM JANITORIAL SERVICES, INC.,<br>    Defendant. | CIVIL ACTION<br><br><br><br>NO. 13-6727 |
|---|---|

### MEMORANDUM RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Baylson, J.                                                                                           February 10, 2015

### I.     Introduction

Plaintiff Earlene Broady contends that she was dismissed from a job site and then terminated from her employment with Defendant ABM Janitorial Services ("ABM") because she complained that her on-site manager was giving preferential treatment to Puerto Rican employees. Broady brings claims for retaliation under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.), 42 U.S.C. § 1981, and the Pennsylvania Human Relations Act (43 P.S. §§ 951-963). Accordingly, the Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 1343(a)(4) over Broady's federal law claims and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Broady's state law claim. ABM has moved for summary judgment. For the reasons that follow, ABM's motion will be denied.

### II.    Procedural Background

Broady filed her complaint on November 20, 2013 (ECF 1). ABM answered on February 19, 2014 (ECF 10). On June 24, 2014, the parties stipulated to dismissal of Broady's claims for race discrimination, national origin discrimination, and hostile work environment, leaving only her claims for retaliation (ECF 22). ABM filed its Motion for Summary Judgment on October

1

13, 2014 (ECF 32). Broady filed her Opposition on October 31, 2014 (ECF 35), and ABM replied on November 10, 2014 (ECF 36).

### III. Factual Background[1]

Broady is a black, Trinidadian woman who was hired by ABM in September 2011. Broady Tr. 12, 53, 76 (Pl. Ex. A). She was hired as a "floater" cleaner, one of several in a "City Hall floaters pool" who filled in for absent permanent employees at various, mostly governmental, buildings in Philadelphia. Id. at 53, 70-71, 76-77. In April 2012 Broady accepted an assignment to fill in at a non-governmental building at 833 Chestnut Street, usually covered by floater cleaners from a separate "general floater pool." Id. at 83-85; Gilbert Tr. 23 (Pl. Ex. D).

In about September 2012, Broady requested a schedule modification which was denied by her on-site manager, Angela Pagan. Broady Tr. 100-101, 103-104. Broady then complained to Pagan that Pagan, who is Puerto Rican, was "showing favoritism to the Puerto Rican people." Id. at 108. The basis for Broady's complaint was that "they had this other Puerto Rican guy that used to come in late every day and she [Pagan] didn't have a problem with it." Id. at 106.

On February 5, 2013, Broady again complained to Pagan about favoritism toward Puerto Rican employees. Id. at 185, 197-200. According to Pagan, Broady complained that "you are getting rid of us so you could bring in your Puerto Rican people." Pagan Tr. 52-53 (Pl. Ex. B). Pagan was "very offended and upset that she said that" and stated both in her testimony and in an email that she directed Broady to report to the floaters pool for a new assignment and did not want Broady working at 833 Chestnut again. Id. at 53; Pagan Email (Pl. Ex. L). Pagan's February 6, 2013 email summarizing the incident was sent to various ABM managers and

---

[1] For purposes of deciding this motion for summary judgment, the factual background is presented in the light most favorable to Broady, the non-moving party. Many of the precise details of the events underlying Broady's claims are disputed.

2

administrators, including Tiffany Rex, an administrator of the general floaters pool, and William George, a human resources manager. Pagan Email (Pl. Ex. L); George Tr. 9-10 (Pl. Ex. C); Rex Tr. 10-11 (Pl. Ex. E).

In response to Pagan's email, George directed Rex to "please issue the floater [Broady] a disciplinary notice" for "discourteous actions," which Rex proceeded to prepare. George Email (Pl. Ex. Q); Employee Corrective Action Notice (Pl. Ex. O). The parties dispute whether and to what extent Broady contacted anyone at ABM and anyone at ABM made efforts to contact Broady during the rest of February 2013. ABM Statement of Facts ¶¶ 68-70 (ECF 32-1); Broady Response to ABM's Statement of Facts ¶¶ 68-70 (ECF 35-1). But in a March 1, 2013 email to George that continued the email string started by Pagan, Rex wrote that Broady had not called in or returned to work since February 5th and requested "a termination letter due to abandonment of job." Rex Email (Pl. Ex. R). George issued a termination letter to Broady that same day. George Letter (Pl. Ex. N). ABM made no efforts to investigate the merits of Broady's complaint. George Tr. 42-43 (Pl. Ex. C); Brager Tr. 32-33 (Pl. Ex. W).

**IV.   Legal Standard**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it

believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response must, "by affidavits or as otherwise provided in this rule [ ] set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

**V. Discussion**

To evaluate whether Broady has sufficient circumstantial evidence to avert summary judgment, the Court considers her claims using the familiar "burden-shifting framework" announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Daniels v. Sch. Dist. of Philadelphia, ---F.3d ----, No. 14-1503, 2015 WL 252428, at *6 (3d Cir. Jan. 20, 2015). Under that framework, "a plaintiff asserting a retaliation claim first must establish a prima facie case by showing (1) that she engaged in protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." Id. at *7 (internal quotation marks and alterations omitted). "If the plaintiff makes these showings, the burden of production of evidence shifts to the employer to present a legitimate, non-retaliatory reason for having taken the adverse action." Id. "If the employer advances such a reason, the

burden shifts back to the plaintiff to demonstrate that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." Id. (internal quotation marks omitted). "Although the burden of production of evidence shifts back and forth, the plaintiff has the ultimate burden of persuasion at all times." Id.

With respect to the first prong of the prima facie case, "protected 'opposition' activity includes . . . informal protests of discriminatory employment practices, including making complaints to management." Id. (internal quotation marks omitted). "The complaint must allege that the opposition was to discrimination based on a protected category, such as age or race." Id. And "although a plaintiff in a retaliation case need not prove the merits of the underlying discrimination complaint, she must have acted under a good faith, reasonable belief that a violation existed," which "requires an objectively reasonable belief that the activity the plaintiff opposed constituted unlawful discrimination under the relevant statute." Id.

Here, Broady has testified that she twice complained to Pagan that Pagan was showing favoritism to Puerto Rican employees. Broady Tr. 108, 198-201. Broady has also articulated several bases for these complaints: (1) her observation that a cleaner she believed to be Puerto Rican was allowed to come in late without consequences, id. at 109-110, 320, (2) her observation that Pagan seemed to have helped a Puerto Rican employee obtain a permanent, full-time job assignment and promotion, id. at 241-42, 320, (3) her observation that two Puerto Rican employees seemed to be given easier job assignments, id. at 314-15, and (4) her observation that only Puerto Rican employees were permitted to sit in Pagan's office, id. at 321-23. Although ABM disputes the accuracy of Broady's testimony, these facts, if proven at trial, would allow a

reasonable fact-finder to conclude that Broady made a good faith, subjectively and objectively reasonable complaint about race-based discrimination.[2]

As to the second prong of the prima facie case, it is undisputed for purposes of summary judgment that Broady suffered an adverse employment action when she was terminated on March 1, 2013. ABM Br. at 17 n.9 (ECF 32-19); ABM Reply at 11 (ECF 36).

With respect to the third prong of the prima facie case, retaliation claims "must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533 (2013). To evaluate causation, courts "consider a broad array of evidence." Daniels, 2015 WL 252428, at *10. "To demonstrate a link between protected activity and an employer's adverse action, a plaintiff may rely on the temporal proximity between the two if unusually suggestive." Id. "In the absence of such a close temporal proximity, [courts] consider the circumstances as a whole, including any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action." Id. In addition, there must be "some evidence that the individuals responsible for the adverse action knew of the plaintiff's protected conduct at the time they acted." Id.

---

[2] ABM has not carried its burden at summary judgment to show that Broady's testimony is undisputedly inaccurate. For example, ABM asserts that the employee who was allowed to come in late was black, not Puerto Rican, but has not identified any evidence in the record presently before the Court to support that assertion. Broady's Response to ABM's Statement of Facts, ¶¶ 27-28 (ECF 35-1). As another example, ABM asserts that Pagan's personal conversations in her office were not during work hours, ABM Br. at 22 (ECF 32-19), but there appears to be no evidence in the record firmly establishing Pagan's work hours and there is some evidence suggesting that Pagan's work hours differed from Broady's work hours. Pagan Email (Pl. Ex. L) (time-stamped February 6, 2013, 9:24 am); Smith Tr. 27-28 (Pagan worked "various hours" and worked "into the night shift" a "couple times a week"). In addition, while Broady's deposition testimony may have been inconsistent about the reasons for Pagan's favoritism, those inconsistencies are not properly resolved on a motion for summary judgment. Compare Broady Tr. 239-41 (disagreeing that favoritism was based on prior experience working with Pagan at a different building) with Broady Tr. 290-92 (agreeing that Pagan favored employees of all races who had worked with her at a different building, and then backtracking and responding "I don't know").

Here, Broady was indisputedly fired less than one month after her February 5, 2013 complaint and the individuals responsible for firing her, Rex and George, were aware of Broady's complaint because they both received and responded to Pagan's email summarizing the incident. Pagan Email (Pl. Ex. L); Rex Email (Pl. Ex. R); George Letter (Pl. Ex. N). The parties dispute whether Broady sought work during February 2013, but agree that she did not receive any new assignments. ABM Statement of Facts ¶¶ 67-68 (ECF 32-1); Broady Response to ABM's Statement of Facts ¶¶ 67-68, 71 (ECF 35-1). And, as discussed in detail below, Broady has identified inconsistencies in ABM's articulated reason for firing her. Given these facts, Broady has put forth sufficient evidence of causation to survive summary judgment.

Finally, ABM has articulated a non-retaliatory reason for terminating Broady based on her alleged job abandonment. As a result, the burden shifts back to Broady to show pretext by submitting evidence that demonstrates "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable fact finder could rationally find them unworthy of credence." Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108-09 (3d Cir. 1997) (en banc) (quoting Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994)). Broady has put forward ample evidence of weaknesses and inconsistencies in ABM's proffered reason to survive summary judgment. There is evidence that Broady was never required to call in to Rex or Aneesah Gilbert, the administrators of the "general floaters pool," because Broady was at all times a floater formally assigned to the "City Hall floaters pool," which had different managers. Broady Tr. 142, 222-23, 250-51; Rex Tr. 18, 34 (Pl. Ex. E); Gilbert Tr. 15-16, 21-22, 42, 67-68 (Pl. Ex. D). For purposes of summary judgment, ABM does not contest Broady's testimony that she called in to the City Hall floaters pool managers throughout February 2013. ABM Br. at 11-12 (ECF 32-19). However, the parties

7

dispute whether and to what extent Rex and Gilbert attempted to contact Broady during February 2013. ABM Statement of Facts ¶¶ 69-71, 73 (ECF 32-1); Broady's Response to ABM's Statement of Facts ¶¶ 69-71, 73 (ECF 35-1). In short, there is evidence that Broady was fired for failing to do something she was never required to do. Moreover, she was recommended to be terminated for job abandonment by an administrator who was not her formal manager and who testified in her deposition that she did not know whether Broady had been checking in with her managers. Rex Tr. 33-34, 44, 52-54. If proved at trial, a reasonable fact finder could rely on this evidence to conclude that ABM's reason for terminating Broady was pretextual.

For all of these reasons, the Court concludes that Broady has enough circumstantial evidence of retaliation to proceed to trial. In light of that conclusion, the Court need not evaluate at this time Broady's arguments based on direct evidence of retaliation.

**VI. Conclusion**

For the foregoing reasons, Defendant ABM's Motion for Summary Judgment (ECF 32) will be denied. An appropriate order follows.

O:\CIVIL 13\13-6727 broady v. abm\13cv6727.Memo.MSJ.2015-02-06.docx